

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-22-00166-CV

**SPENCER CANTER AND**
**AMERICAN MEDICAL RESPONSE, INC.,**

                                   **Appellants**

 **v.**

**ZAIDA SOTO TOCA,**

                                   **Appellee**


_____

### From the 74th District Court
### McLennan County, Texas
### Trial Court No. 2021-1574-3

_____

## MEMORANDUM OPINION

_____

This appeal arises from the trial court's denial of a motion to dismiss for failure to provide an expert report under Chapter 74 of the Texas Civil Practice and Remedies Code filed by appellants, Spencer Canter and American Medical Response, Inc. ("AMR"). In one issue, appellants contend that the claims brought against them for injuries sustained during a collision between appellants' ambulance and another driver are health care liability claims; thus, the claims are subject to the expert-report requirement of section

74.351(a) of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Because we conclude that appellee Zaida Soto Toca's claims against appellants are not health care liability claims and are not subject to the expert report requirement of section 74.351(a), we affirm.

## Procedural and Factual History

On February 15, 2020, Canter, an Emergency Medical Technician, was transporting a patient in an AMR ambulance. On the way to the hospital, Canter tried to pass a line of cars but rear ended Zaida Soto Toca's vehicle, which was stopped at a stoplight. In Canter's affidavit in support of appellants' motion to dismiss, Canter described the incident as follows:

> I was approaching the intersection of Bellmead Dr. and I-35. I was running priority traffic. I turned off my siren as I approached the red light, but oncoming traffic had completely came to a stop and someone flashed their brights at me to let me know that they were not moving. I moved into the lane of oncoming traffic slowly and turned my siren back on. I made it safely past the first few cars in the left lane, and suddenly heard a thud, and came to a complete stop at the traffic light. I turned off my sirens and put the ambulance in park. I radioed to dispatch and said something to the effect of "115 to dispatch I believe my unit has been in an accident, and I am unsure what it was that occurred." I saw hazard lights on in my sideview mirror and made a radio correction to dispatch to inform them of the accident.

As a result of the accident, Toca's vehicle was slightly angled so that the back of Toca's vehicle was slightly in the oncoming lane. Canter recounted that Toca "self-extricated,

with no complaints, in no signs of distress, and with no apparent life threats. [Toca's] vehicle has minor damage to her taillight, and driver side."[1]

Toca sued appellants, asserting claims for negligence, negligence per se and vicarious liability. After filing an original answer and request for a jury trial, appellants filed a Chapter 74 motion to dismiss, alleging that Toca's claims "invoke violation[s] of safety standards of healthcare providers," which are health care liability claims for which an expert report is required. *See id.* §§ 74.001(a)(13), 74.351. Appellants further alleged that Toca's claims should be dismissed because Toca has not filed an expert report in this matter. *See id.* § 74.351(a). Toca responded that the claims against appellants are not health care liability claims for a variety of reasons.

The trial court conducted a hearing on appellants' Chapter 74 motion to dismiss and concluded that Toca's claims are not health care liability claims. The trial court signed the order denying appellants' Chapter 74 motion to dismiss, and this interlocutory appeal followed.

---

[1] In the appellee's brief, Toca references a police report of the accident drafted by Officer Matthew Kennedy of the Bellmead Police Department. Toca also attached a copy of the police report to the appellee's brief and labeled it Exhibit 1. This exhibit, however, was not included in the appellate record and thus cannot be considered in this appeal. *See Gonzalez v. Villarreal*, 251 S.W.3d 763, 777 n.17 (Tex. App.—Corpus Christi 2008, pet. dism'd w.o.j.) (noting that the attachment of documents as exhibits or appendices to appellate briefs is not formal inclusion in the appellate record); *see also Till v. Thomas*, 10 S.W.3d 730, 733-34 (Tex. App.—Houston [1st Dist.] 1999, no pet.) ("We cannot consider documents attached to an appellate brief that do not appear in the record.").

**Toca's Claims Are Not Health Care Liability Claims**

In their sole issue on appeal, appellants challenge the trial court's denial of their Chapter 74 motion to dismiss for failure to provide an expert report. Specifically, appellants contend that the claims brought by Toca for injuries sustained from a collision with appellants' ambulance are health care liability claims for which an expert report is required. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. We disagree.

STANDARD OF REVIEW

Whether a pleading asserts a health care liability claim under Chapter 74 is a question of law that we review de novo. *Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 836 (Tex. 2022) (citing *Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019)); *Coci v. Dower*, 585 S.W.3d 652, 655 (Tex. App.—Eastland 2019, pet. denied). "To answer that question, we must focus on the claim's 'underlying nature . . . rather than its label." *Gaytan*, 640 S.W.3d at 836 (quoting *Weems*, 575 S.W.3d at 363). "To determine the claim's underlying nature, we must consider the 'entire court record,' including 'the pleadings, motions and responses, and relevant evidence properly admitted." *Id.* (quoting *Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012)).

APPLICABLE LAW

Chapter 74 of the Texas Civil Practice and Remedies Code requires a claimant who asserts a "health care liability claim" against a "physician or health care provider" to serve on each defendant one or more expert reports describing the expert's opinions

addressing the applicable standards of care, how the defendant's conduct failed to meet those standards, and how those failures caused the claimant's injury, harm, or damages. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6). If a claimant fails to serve the report on the defendants within 120 days after the defendants file their original answer, the trial court must dismiss the claim with prejudice and award the defendants attorney's fees and costs. *Id.* § 74.351(a)-(b). The question in this appeal is whether Toca's claims for negligence, negligence per se and vicarious liability regarding the collision with appellants' ambulance constitutes a health care liability claim as defined in Chapter 74.

A health care liability claim is defined as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *see Gaytan*, 640 S.W.3d at 840-41. This statutory definition contains three elements:

> (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant.

*Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179–80 (Tex. 2012); *see Gaytan*, 640 S.W.3d at 841. "As in most disputes over whether a claim constitutes a health care

liability claim, the primary issue here involves the second element"—whether Toca's claims concern "treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *see also Gaytan*, 640 S.W.3d at 841.

In the instant case, appellants characterize Toca's claims as alleged violations of safety standards or safety standards-based claims. "Safety" is not defined in Chapter 74; however, the Texas Supreme Court has construed "safety" according to its common meaning as "the condition of being untouched by danger; not exposed to danger; secure from danger, harm or loss*." Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) (internal citations & quotation marks omitted). The *Ross* court further explained that a safety-standard claim need not be directly related to the provision of health care to qualify as a health care liability claim; however, "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Ross*, 462 S.W.3d at 504; *see Tex. W. Oaks Hosp., L.P.*, 371 S.W.3d at 186.

Because "the line between a safety standards-based claim that is not a [health care liability claim] and one that is a [health care liability claim] may not always be clear," the Texas Supreme Court considers the following non-exclusive factors in determining whether a substantive nexus exists between the safety standards allegedly violated and the provision of health care:

1.  Did the alleged negligence of the defendant occur in the course of the defendant performing tasks with the purpose of protecting patients from harm;

2.  Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3.  At the time of the injury was the claimant in the process of seeking or receiving health care;

4.  At the time of the injury, was the claimant providing or assisting in providing health care;

5.  Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6.  If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7.  Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*See id*. at 505. "The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id*.

When examining the above-mentioned factors, Texas courts focus on the "essence of the cause of action" and assess whether the claims are ordinary negligence claims or health care liability claims as contemplated by the legislature when it provided for health care liability claims in Chapter 74. *Coci*, 585 S.W.3d at 656 (citing *Tex. W. Oaks Hosp., LP*, 371 S.W.3d at 176; *Bain v. Cap. Senior Living Corp.*, No. 05-14-00255-CV, 2015 Tex. App.

LEXIS 6704, at *7 (Tex. App.—Dallas June 30, 2015, pet. denied) (mem. op.)). "When we focus on the essence of the cause of action, we 'consider the alleged wrongful conduct and the duties allegedly breached.'" *Id.* (quoting *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005)). It is appellants' burden in the trial court to show that the essence of the cause of actions are health care liability claims. *Id.* at 657 (citing *Reddy v. Veedell*, 509 S.W.3d 435, 438 (Tex. App.—Houston [1st Dist.] 2014, pet. denied)).

ANALYSIS

Toca alleges that Canter failed to use ordinary care in the operation of the AMR ambulance, which was a proximate cause of the wreck, and that AMR's failure to use ordinary care to ensure Canter was a safe and competent driver was also a proximate cause of the wreck and resulting injury. After applying *Ross*, we find that many of the factors do not weigh in favor of concluding that Toca's claims against appellants constitute health care liability claims. In particular, Toca's alleged injuries occurred outside the ambulance and not in a place where Toca was receiving care. *See Ross*, 462 S.W.3d at 504-05 ("But although the mere location of an injury in a health care facility or in a health care setting does not bring a claim based on that injury within the TMLA so that it is an HCLC, the fact that the incident could have occurred outside such a facility or setting does not preclude the claim from being an HCLC."); *Coci*, 585 S.W.3d at 654; *see also City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 Tex. App. LEXIS 8965, at *52 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op. on reh'g).

Additionally, the allegations demonstrate that Toca was merely a driver on the road; Toca was not the patient; nor did Toca receive health care from appellants or provide or assist in the provision of health care by appellant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(10) ("Health care" is "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." (internal quotations omitted)); *see Coci*, 585 S.W.3d at 657 ("In this case, the legal duties allegedly violated apply to every driver on the road; they are not unique to a health care provider driving an ambulance.").

Moreover, the fact that an ambulance was involved does not automatically morph the claim into a health care liability claim. *See Coci*, 585 S.W.3d at 656 ("We do not believe that the fact that an ambulance was involved automatically morphs all claims into health care liability claims."); *see also Hussein*, 2020 Tex. App. LEXIS 8965, at *51. Here, Toca never received any medical treatment in the ambulance. Under these circumstances, the ambulance was not an instrumentality used in the provision of health care to Toca, a non-patient. *See, e.g., Hussein*, 2020 Tex. App. LEXIS 8965, at **43-44, 51 (concluding that an ambulance was an instrumentality in the provision of health care for a patient, but it was not an instrumentality for the provision of health care to a passenger in the ambulance that was not a patient); *Valley Reg'l Med. Ctr. v. Camacho*, No. 13-14-00004-CV, 2015 Tex. App. LEXIS 4967, at **9-11 (Tex. App.—Corpus Christi May 14, 2015, no pet.) (mem. op.)

(concluding that, as to non-patient plaintiff, who was visiting family-member patient at the hospital and was struck by an automatic sliding door, the sliding door did not constitute the type of instrumentality used in the provision of health care); *cf. Taton v. Taylor*, No. 02-18-00373-CV, 2019 Tex. App. LEXIS 5422, at **11-18 (Tex. App.—Fort Worth June 27, 2019, no pet.) (concluding that a substantive nexus existed between allegedly violated safety standards and provision of health care where plaintiff was injured while being transported in a handicap-accessible van).

And while a few other *Ross* factors may weigh in the opposite direction, we note that the "essence of the cause of action" is one of ordinary negligence and is not a health care liability claim.[2]  *See Ross*, 462 S.W.3d at 505; *Coci*, 585 S.W.3d at 657.  Like *Coci*, the legal duties allegedly violated in this case apply to every driver on the road and are not unique to a health care provider driving an ambulance.  *See Coci*, 585 S.W.3d at 657. Therefore, we cannot say that appellants have met their burden in showing a substantive nexus between the safety standards allegedly violated and the provision of health care.

---

[2] Our conclusion that Toca's claims in this case are not health care liability claims is consistent with two recent opinions from the First and Eleventh Courts of Appeals.  *See generally Coci v. Dower*, 585 S.W.3d 652 (Tex. App.—Eastland 2019, pet. denied); *City of Houston v. Hussein*, No. 01-18-00683-CV, 2020 Tex. App. LEXIS 8965 (Tex. App.—Houston [1st Dist.] Nov. 19, 2020, pet. denied) (mem. op. on reh'g).  In both cases, the plaintiffs were injured while riding as an ambulance passenger with a family member who was the patient receiving medical treatment.  *See Coci*, 585 S.W.3d at 654; *see also Hussein*, 2020 Tex. App. LEXIS 8965, at *52.  Both cases involved ambulance collisions that caused injuries to the passengers in the ambulance.  *See Coci*, 585 S.W.3d at 654; *see also Hussein*, 2020 Tex. App. LEXIS 8965, at *2.  Furthermore, both courts found that the negligent operation of the ambulance causing injuries to someone not receiving medical services from the ambulance was not a health care liability claim.  *See Coci*, 585 S.W.3d at 657; *see also Hussein*, 2020 Tex. App. LEXIS 8965, at *54.

*See Ross*, 462 S.W.3d at 504; *see also Tex. W. Oaks Hosp., L.P.*, 371 S.W.3d at 186. As such, we conclude that: (1) Toca's claims are not health care liability claims; (2) Chapter 74's expert report requirement does not apply to Toca's claims; and (3) the trial court did not err by denying appellants' Chapter 74 motion to dismiss. We overrule appellants' sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith
(Chief Justice Gray dissents with a note)*
Affirmed
Opinion delivered and filed August 31, 2022
[CV06]

*(Chief Justice Gray dissents. A separate opinion will not issue. Chief Justice Gray provides the following dissenting note: I am having trouble with finding that this is an ordinary care tort which seems to be the tipping point for the Court's analysis. But the ambulance driver is not measured by the standard of an ordinarily prudent driver. He was driving as the operator of an "Authorized Emergency Vehicle" under Chapter 546 of the Texas Transportation Code. If he had been on his way to lunch and hit Mrs. Toca, the claim would not fit the definition of a health care liability claim, nor would it get a yes on more than one or two of the seven factors listed in the opinion. But the ambulance driver was driving against opposing traffic during a patient transport as part of the services being provided as medical care to a patient. The ambulance driver's alleged tort will not be based on his failure to act as a reasonably prudent person since ordinary people are not even authorized to drive in the oncoming lane, rather it will be whether he failed to act as a reasonably prudent ambulance driver while transporting a patient, in essence, a

specialized standard of care. Moreover, it will be limited to whether his conduct was reckless. The claim meets the statutory definition of a health care claim, and I respond "yes" to 5 out of 7 of the factors identified by the Supreme Court of Texas in *Ross* as listed in the court's opinion. If I was writing the statute and had foreseen this fact pattern, I might have written the statute to exclude this fact pattern from application of the health care liability act. But we did not write the statute. The claim fits the statutory definition of a health care liability claim. We should not write around the statute to what we think would have been a better one. To meet the requirements of the statute, Mrs. Toca merely had to file an expert report which set out the standard of care, the breach, and the causation. Specifically, the report should have set out what an ambulance driver was required to do, how it was breached, and that such breach was the proximate cause of the injuries suffered. She did not. Her claim should be dismissed. The court's judgment does not do so. Accordingly, I respectfully dissent.)

