Opinion issued May 21, 2009










                    





     

In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00507-CR




EDWARD EUGENE INGLEHART, II, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 1122113




MEMORANDUM OPINION

          Appellant, Edward Eugene Inglehart, II, pleaded guilty to the first-degree
felony offense of aggravated robbery.


 The trial court assessed punishment at
confinement for 18 years. 
          In his sole point of error, appellant contends that the trial court erred by
denying his motion for new trial, in which he asserted that he received ineffective
assistance of counsel at trial.
          We affirm.
Background
           On the night of June 22, 2007, the complainant, Johnnatem Hayes, left work,
picked up her children, and headed home. Appellant and two other men followed her
home. While Hayes was in her driveway, appellant approached her, forced her to the
ground at gunpoint, and demanded money. One of the men pulled at Hayes’s clothing 
and groped her under her clothing. Hayes’s children watched from the car, screaming
and crying. Hayes told the men that she did not have any money, and the men ran
back to their car and drove away. 
          Appellant, through his counsel, James R. Reed, pleaded guilty to aggravated
robbery without an agreed recommendation as to punishment. In conjunction with
his plea, appellant signed a waiver of constitutional rights, agreement to stipulate, and
judicial confession. At the plea hearing, the trial court established that appellant
understood that the range of punishment for the offense of aggravated robbery was
confinement for five to 99 years, or life, plus a fine not to exceed $10,000, and that
there was not an agreed recommendation in this case. The trial court explained that
a pre-sentence investigation (“PSI”) would be conducted. The court asked appellant
if he had been promised anything or told that he would receive a specific sentence in
this case, and appellant replied in the negative. Appellant confirmed that he had read
the admonishment forms with counsel and that he understood them. The trial court
found appellant guilty as charged and made an affirmative finding as to the use of a
deadly weapon. After the PSI report was prepared and a hearing was held, the trial
court assessed punishment at 18 years’ confinement.
          Appellant filed a motion for new trial, through new counsel, Vivian R. King,
in which he raised numerous allegations of ineffective assistance against Reed. 
Appellant contended that his plea was involuntary because it was the product of
ineffective assistance of counsel. Specifically, appellant contended that Reed
“promised [appellant] a sentence of 10 years’ probation with the worst case scenario
being 6 months county time as a condition of probation”; told appellant, when he
“initialed the range of punishment of 5 to 99 years or life” in the plea papers, that
“that type of sentence was rarely given”; that Reed “insisted” that appellant waive his
right to a jury trial; and that Reed failed to fully inform appellant of the possible
defenses and the full range of punishment prior to his plea. 
          At the hearing on the motion for new trial, appellant and his mother, Chandra
Willis, each testified that Reed had “promised” or had “guaranteed” community
supervision in this case. Appellant testified that Reed had advised him that he would
receive community supervision if he falsely maintained that one of the other
assailants, Herman Mitchell, who is now deceased, had held the weapon on Hayes. 
Appellant admitted that he had not been truthful during the preparation of the PSI
report and the PSI hearing when he said that he did not have the weapon. Appellant
asserted that Reed had failed to present evidence that, after the incident herein
occurred, appellant was shot “through” his head in another incident and had
experienced memory loss and difficulty in understanding that had affected his
veracity during the preparation of the PSI report and the PSI hearing. As laid out
below, Reed testified concerning his representation of appellant. After the hearing,
the trial court denied appellant’s motion for new trial. This appeal ensued.
Motion for New Trial Based on Ineffective Assistance of CounselAppellant contends that the trial court erred by denying his motion for new
trial, in which he asserted that he received ineffective assistance of counsel at trial.
Specifically, appellant contends (1) that his plea of guilt was involuntary because it
was predicated on erroneous promises by counsel that appellant would receive
community supervision; (2) that counsel failed to present evidence in mitigation of
his punishment that, subsequent to the offense, appellant was “shot through the head,”
which negatively affected his cognitive abilities and caused appellant to give “false
or evasive answers” during the PSI and PSI hearing; and (3) that counsel failed to
timely file appellant’s appeal.
A.      Standards of Review and Guiding Legal Principles
          We review a trial court’s denial of a motion for new trial for an abuse of
discretion. Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); Anderson
v. State, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d). We
view the evidence in the light most favorable to the trial court’s ruling and uphold the
ruling if it is within the zone of reasonable disagreement. Webb, 232 S.W.3d at 112.
A trial court abuses its discretion in denying a motion for new trial only when no
reasonable view of the record could support the trial court’s ruling. Id. We do not
substitute our judgment for that of the trial court. Id. At a hearing on a motion for new
trial, the trial court is the sole judge of the credibility of the witnesses and the weight
to be given their testimony. Melton v. State, 987 S.W.2d 72, 75 (Tex. App.—Dallas
1998, no pet.).
          To prove ineffective assistance of counsel, appellant must show that (1)
counsel’s performance fell below an objective standard of reasonableness and (2)
that, but for the deficient performance of counsel, there is a reasonable probability
that the result of the proceeding would have been different. Strickland v. Washington,
466 U.S. 668, 687, 694, 104 S. Ct. 2052, 2064, 2068 (1984); Andrews v. State, 159
S.W.3d 98, 101 (Tex. Crim. App. 2005). A “reasonable probability” is a probability
sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694, 104
S. Ct. 2068.
          To prevail, appellant must prove ineffective assistance by a preponderance of
the evidence and must overcome the strong presumption that counsel’s conduct falls
within the wide range of reasonably professional assistance or might reasonably be
considered sound trial strategy. See Robertson v. State, 187 S.W.3d 475, 482–83
(Tex. Crim. App. 2006); Gamble v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston
[1st Dist.] 1996, no pet.). A failure to make a showing under either prong defeats a
claim of ineffective assistance of counsel. Rylander v. State, 101 S.W.3d 107, 110–11
(Tex. Crim. App. 2003).
          As the reviewing court, we look to the totality of the representation and to the
circumstances of the case, not to isolated errors. Robertson, 187 S.W.3d at 483–84.
We must consider the adequacy of assistance as viewed at the time of trial, not
through hindsight. Id. at 482.
 
 
B.      Analysis
          1.       Involuntary Plea
          Appellant first contends that his trial counsel, Reed, was ineffective because
he erroneously “promised” that appellant would receive community supervision in
exchange for pleading guilty. Appellant contends that his plea, which was predicated
on Reed’s erroneous advice, was rendered involuntary. Specifically, appellant directs
us to the hearing on the motion for new trial, at which appellant testified during direct
examination as follows: 
          [Counsel]:              Did you, at any time when you signed the admonishments,
did you realize that the Judge could give you something
other than probation?
          [Appellant]:           No, ma’am, I didn’t.
          [Counsel]:              Why not?
          [Appellant]:           Because they kept telling me probation. So that’s what I
was thinking I was going to get.
          [Counsel]:              Now, you said they kept telling you, who is “they”?
          [Appellant]:           No, he did, Mr. Reed.
          In addition, appellant directs us to the testimony of his mother, Chandra Willis,
who testified as follows on direct examination regarding the conversation Reed had
with appellant and Willis: 
          [Counsel]:              . . . What did he [Reed] tell you?
          [Willis]:                 He basically told us, my son and I, [sic] that for him to just
listen to him closely and follow his rules. And he said, I
can guarantee you I can get probation out of this, just you-all got to do exactly what I say do.
                                         It—he never talked—he never talked to us and told us
anything as far as a P.S.I. is concerned. Didn’t even know
about a P.S.I. until here recently. But he did tell us that,
um, if he just go by his way [sic] and do everything his
way, he could pretty much guarantee probation.

          A plea is not voluntary if made as a result of ineffective assistance of counsel.
Fimberg v. State, 922 S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet.
ref’d). When a defendant challenges the voluntariness of a plea entered upon the
advice of counsel, contending that his counsel was ineffective, the voluntariness of
the plea depends on (1) whether counsel’s advice was within the range of competence
demanded of attorneys in criminal cases and, if not, (2) whether there is a reasonable
probability that, but for counsel’s errors, the defendant would not have pled guilty
and would have insisted on going to trial. Ex parte Moody, 991 S.W.2d 856, 857–58
(Tex. Crim. App. 1999) (applying Strickland, 466 U.S. at 694, 104 S. Ct. at 2068) (A
“reasonable probability” is a probability sufficient to undermine confidence in the
outcome.)); Arreola v. State, 207 S.W.3d 387, 391 (Tex. App.—Houston [1st Dist.]
2006, no pet.); see Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999)
(stating that Strickland should be considered “controlling authority for all ineffective
assistance of counsel claims”).

          The failure to advise a defendant about the consequences of a plea can
constitute ineffective assistance. See Arreola, 207 S.W.3d at 392. However, a
defendant’s claim that “he was misinformed by counsel, standing alone, is not enough
for us to hold his plea was involuntary.” Fimberg, 922 S.W.2d at 208. 

          Here, the record shows that appellant signed under oath a waiver of
constitutional rights, agreement to stipulate, and judicial confession. In the plea
admonishments he signed, appellant attested that he understood that the punishment
range for the offense to which he was pleading guilty was confinement for five to 99
years, or life, and a fine of up to $10,000, and that there was not an agreed
recommendation as to punishment. In addition, appellant attested, “I have read, and
I understand the admonishments set out above,” and “I understand my plea’s
consequences.” A defendant’s receipt of statutory admonishments constitutes a prima
facie showing of the plea’s voluntariness. See Cantu v. State, 988 S.W.2d 481, 484
(Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). When a defendant attests to the
voluntary nature of his plea at the original plea hearing, a heavy burden is placed on
him if he later argues that the plea was involuntary. Id.

          In addition, the record of the plea hearing shows that the trial court established
that appellant understood that the range of punishment for the offense of aggravated
robbery was confinement for 5 to 99 years, or life, plus a fine not to exceed $10,000,
and that there was not an agreed recommendation as to punishment in this case. The
trial court explained that a pre-sentence investigation would be conducted. The court
asked appellant if he had been promised anything or if he had been told that he would
receive a specific sentence, and appellant replied in the negative. Appellant
confirmed that he had read the admonishment forms, that he had covered them with
counsel, and that he understood them. Thus, the record reflects that appellant was
fully aware that by pleading guilty he faced the full range of punishment for the
offense of aggravated robbery. 

          Reed testified at the hearing on the motion for new trial that he explained to
appellant and to appellant’s family, including Willis, the nature of the charges and the
range of punishment. Reed said that he sent investigators to talk with the
complainant and that he learned that she was a strong witness. Reed advised
appellant that going to trial “would not bode well for him.” Reed felt that the PSI
“was the only way that he could reduce his exposure” and that appellant “had a
chance at probation.” Reed testified, “I did not guarantee that would happen, ever.” 
Reed said that he explained that the trial court could consider the entire range of
punishment. 

          We have previously declined to find ineffective assistance of counsel based
solely on a defendant’s claim that his plea was involuntary due to counsel’s promises,
when counsel denied making the promises. See Fimberg, 922 S.W.2d at 208
(refusing to find plea involuntary based on testimony of appellant and his son that
counsel promised appellant would not serve time if he pleaded guilty, and counsel
denied making such promise). Here, given Reed’s testimony, we cannot conclude
that Reed’s advice was outside the range of competence demanded of attorneys in
criminal cases. See Moody, 991 S.W.2d at 857–58. 

          Further, appellant has not shown that there is a reasonable probability that he
“would not have pled guilty and would have insisted on going to trial.” See id.
(emphasis added). Appellant contends that his testimony shows that he would not
have entered his guilty plea had he known he would not receive community
supervision. The record shows, however, that when asked whether he would “have
signed for a presentence report had [he] known [he was not] going to get probation,”
he responded, “Probably not, ma’am.” We conclude that appellant has failed to rebut
the presumption that his guilty plea was voluntary. See Cantu, 988 S.W.2d at 484.

          At a hearing on a motion for new trial, the trial court is the sole judge of the
credibility of the witnesses and the weight to be given their testimony. Melton, 987
S.W.2d at 75. Here, the trial court apparently chose to believe Reed’s testimony over
that of appellant and Willis. We cannot conclude that “no reasonable view of the
record could support the trial court’s ruling.” See Webb, 232 S.W.3d at 112.

          2.       Mitigating Evidence

          Appellant next contends that Reed was ineffective because he “failed to present
mitigating evidence that after the date of the offense, appellant had been shot in the
head, and as a result of his injuries, had suffered cognitive and behavioral deficits.” 
Appellant contends that his injury would have explained why he “had given false or
evasive answers to the preparer of the PSI report” and to the trial court at the PSI
hearing. Appellant and his mother each testified at the hearing on the motion for new
trial that appellant had suffered a loss of understanding since the shooting.

          Reed testified at the hearing on the motion for new trial that appellant and his
family wanted Reed to use the fact that appellant had been shot in the head to evoke
sympathy from the trial court. Reed testified that he felt that such evidence would be
far more damaging to appellant because it demonstrated that after the incident at
hand, appellant was still “out at night in a situation where there was gunplay.” Reed
stated that he did not notice any difference in appellant’s cognitive skills after the
shooting. 

          As the State points out, the medical evidence introduced at the hearing on the
motion for new trial does not reflect that appellant was “shot through the head.” To
the contrary, the medical report states that appellant was diagnosed with a
“laceration/contusion” and that there was “no open intracranial wound.” In addition,
the medical report reflects that appellant was examined for cognitive deficits and that
“none” were shown. 

          We cannot conclude that appellant has met his burden to overcome the strong
presumption that counsel’s conduct might reasonably be considered sound trial
strategy. See Robertson, 187 S.W.3d at 482–83; Gamble, 916 S.W.2d at 93. In
addition, we cannot conclude that “no reasonable view of the record could support
the trial court’s ruling.” Webb, 232 S.W.3d at 112.

          3.       Notice of Appeal

          Finally, appellant contends that counsel was ineffective because he “failed to
inform Appellant that he had a right to appeal his sentence” and “failed to file a
timely notice of appeal after the PSI hearing.” We note that appellant does not
present any argument or citations to authority in support of his contentions. See Tex.
R. App. P. 38.1(h). 

          First, the record shows that appellant was informed of his right of appeal. The
record shows that the Trial Court’s Certification of Defendant’s Right of Appeal
reflects that appellant attested, “I have also been informed of my rights concerning
any appeal of this criminal case.” The Certification indicates that the appellant “has
the right of appeal.” Both appellant and his counsel signed the Certification. 

 
          Next, because appellant timely filed a motion for new trial in this case,
appellant’s notice of appeal was due within 90 days after the date sentence was
imposed. See Tex. R. App. P. 26.2(a)(2). Appellant’s sentence was imposed on
March 28, 2008. Appellant’s notice of appeal, filed May 29, 2008, was timely. 
Appellant has not shown how he has been prejudiced by any error of his counsel, and
we cannot conclude on the record before us that appellant was so prejudiced. 

          In sum, as to all the grounds appellant raises on appeal, after reviewing the
totality of counsel’s representation and employing the strong presumption that
counsel’s conduct might reasonably be considered sound trial strategy, as we must,
we conclude that appellant has not met his burden to show that his counsel was
ineffective. See Robertson, 187 S.W.3d at 482–83; Gamble, 916 S.W.2d at 93. 

          Having determined that appellant did not meet his burden to show ineffective
assistance of counsel, we conclude that the trial court did not abuse its discretion by
denying appellant’s motion for new trial on these bases. See Webb, 232 S.W.3d at
112; Anderson, 193 S.W.3d at 39.

          Accordingly, we overrule appellant’s sole point of error. 

 
 
 
 
Conclusion

          We affirm the judgment of the trial court.





 

                                                             Laura Carter Higley

                                                             Justice



Panel consists of Justices Jennings, Keyes, and Higley.



Do not publish. See Tex. R. App. P. 47.2(b).